UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEHRIT TESHOME; ROCCO
VOLKER; JAMES VERT; and
10.23 BUILD, LLC,

    Plaintiffs,

 v.

CITY OF SEATTLE,

    Defendant.

C25-1226 TSZ

ORDER

THIS MATTER comes before the Court on a motion to dismiss, docket no. 23, brought by defendant City of Seattle ("the City").  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiffs Mehrit Teshome, Rocco Volker, James Vert, and 10.23 Build, LLC challenge the constitutionality of the City's Mandatory Housing Affordability for Residential Development ("MHA") ordinance, codified as Seattle Municipal Code ("SMC") Chapter 23.58C, arguing that the MHA ordinance effectuates a "taking" of private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  The Court has previously (i) rejected, as

ORDER - 1

meritless, a similar facial challenge to the MHA ordinance, and (ii) deemed premature another individual's as-applied challenge to the MHA ordinance.  _See_ _Adams v. City of Seattle_, No. C22-1767, 2024 WL 3253297 (W.D. Wash. June 28, 2024), _aff'd_, No. 24-6505, 2025 WL 3081848 (9th Cir. Nov. 4, 2025).  Attorneys with the Institute for Justice who represented the plaintiff in _Adams_ have also appeared for plaintiffs in this matter, which was previously stayed pending a decision in _Adams_ by the United States Court of Appeals for the Ninth Circuit.  _See_ Minute Order (docket no. 16).  The mandate in _Adams_ having issued in January 2026, the parties proposed a briefing schedule, which the Court adopted, for the City's motion to dismiss plaintiffs' claims in this action.  _See_ Minute Orders (docket nos. 18 and 22); Joint Status Report (docket no. 20).  The City now relies on the reasoning in _Adams_ to seek dismissal of plaintiffs' facial and as-applied challenges to the MHA ordinance.

**A.	The MHA Ordinance**

The MHA ordinance provides _inter alia_ that, if an applicant seeks a permit for construction of a new structure or an addition or alteration to an existing structure that increases the number of units[1] on the property, the applicant must comply with either the MHA's "performance option" or the MHA's "payment option," unless a modification is requested and approved.  _See_ SMC 23.58C.025 & .035.  The MHA's "performance

---

[1] A "unit" is a "dwelling unit, small efficiency dwelling unit, live-work unit, or congregate residence sleeping room."  SMC 23.58C.020.  A "dwelling unit" does **_not_** include an accessory dwelling unit.  _Id._  Accessory dwelling units, which are allowed as a housing use in all zones where housing uses are allowed, may be attached, detached, or stacked.  SMC 23.42.022.

ORDER - 2

option" entails developing within the structure for which a permit is sought a certain number of units that will be rented or sold at below-market rates to persons with lower than median incomes.  *See* SMC 23.58C.050.  The MHA's "payment option" involves a fee, calculated as a specific amount per square foot of the development, which will be deposited into a special account and used for the purposes outlined in RCW 36.70A.540.  *See* SMC 23.58C.040.  Applicants may seek modification of MHA requirements in the manner set forth in SMC 23.58C.035, which authorizes the Director of the Seattle Department of Construction & Inspections ("SDCI") to reduce or waive the amount of performance or payment if an applicant "can demonstrate facts supporting a determination of severe economic impact[2] at such a level that a property owner's constitutional rights may be at risk."  SMC 23.58C.035(C)(1).

**B.      Mehrit Teshome and Rocco Volker**

Plaintiffs Teshome and Volker are married and own real property located on Bradner Place South in Seattle.  Compl. at ¶¶ 63–64 (docket no. 1).  Their four-bedroom home sits on three parcels and contains 4,650 square feet of floor space.  *Id.* at ¶ 66.

---

[2] A "severe economic impact" exists if the MHA requirements will either (a) deprive the property owner of "all economically beneficial use of the property," or (b) reach "the level of an undue burden that should not be borne by the property owner."  SMC 23.58C.035(C)(3).  The latter "undue burden" analysis involves weighing the following nonexclusive factors: (a) the severity of the economic impact; (b) the degree to which the MHA requirements were or could have been anticipated; (c) the extent to which alternative uses of the property or different configurations of the proposed development would alleviate the need for a waiver or reduction; (d) the extent to which any economic impact was caused by the property owner's decisions; and (e) other factors relevant to whether the burden should be borne by the property owner.  *See* SMC 23.58C.035(C)(4).

ORDER - 3

They wish to demolish the existing structure and build a smaller (3,365-square-foot) residence on just one of the three parcels, leaving the other two parcels available for future development.  _Id._ at ¶¶ 67–69.  They originally wanted to include, in the new house, an attached accessory dwelling unit ("AADU"), but at the time they sought a building permit, the City's land-use zoning provisions relating to their property did not permit a single dwelling unit to contain an AADU.  _See id._ at ¶¶ 69–70.  They could, however, build a "duplex," _i.e._, two dwelling units, meaning an increase in the number of units on the Bradner Place South property, which would require compliance with the provisions of the MHA ordinance.  _See id._ at ¶¶ 71–75.

In applying for a permit, Teshome and Volker chose the MHA's "payment option," and in March 2024, they provided a check in the amount of $36,432.28 to the City.  Compl. at ¶¶ 88–91 (docket no. 1).  In advance of making this payment and obtaining a permit, they did **not** request a waiver pursuant to SMC 23.58C.035.  _Id._ at ¶¶ 92–93.  They subsequently contacted SDCI to inquire about submitting a waiver request, but in November 2024, they were advised that such request must be part of the permit application, and that the only way to obtain a refund was to "withdraw" the permit and submit a new application.  _Id._ at ¶¶ 95–97.  They declined to do so before filing this lawsuit in late June 2025.  _See id._ at ¶¶ 98–99.  In December 2025, the City adopted the "One Seattle Plan," pursuant to which accessory dwelling units are now allowed on the Bradner Place South property.  _See_ Seattle Ordinance Nos. 127375 & 127376.  The City has since reclassified the project on that property from a "duplex" to a remodeled single-family home with an AADU, meaning that the MHA ordinance does not apply and

ORDER - 4

Teshome and Volker are entitled to a refund.  *See* Pls.' Resp. at 11 n.2 (docket no. 24). Tesome and Volker contend that the City should also pay them interest.  *See id.*

**C.      James Vert and 10.23 Build, LLC**

Plaintiff Vert operates 10.23 Build, LLC ("10.23 Build"), which is owned by another limited liability company that Vert owns with his wife.  *Id.* at ¶ 106.  Vert and 10.23 Build specialize in small residential projects, from single-family homes to as large as a seven-unit structure.  *Id.* at ¶ 107.  In connection with recent construction efforts, Vert has elected the MHA's "payment option," writing "paid under protect" on a check for $124,093.19 that was provided to the City to obtain a permit for a four-unit complex on Chilberg Avenue Southwest in Seattle.  *Id.* at ¶¶ 111–12 & 127–32.  Vert and 10.23 Build did not seek a waiver pursuant to SMC 23.58C.035, and they cannot "withdraw" the permit and submit a new application because they have already broken ground on the project.  *See id.* at ¶¶ 133–34.  Moreover, Vert did not wish to "withdraw" the permit because doing so would delay the project and potentially require him and 10.23 Build to incur more costs.  *Id.* at ¶ 135.  Vert and 10.23 Build allege that they are now choosing not to purchase or develop parcels in Seattle that are within MHA-governed zones, and that their business success might be adversely affected by such continued avoidance.  *Id.* at ¶¶ 136–43.

**Discussion**

**A.      Standard for Motion to Dismiss**

In ruling on a motion brought under Federal Rule of Civil Procedure 12(b)(6), the Court must assume the truth of factual allegations set forth in the operative pleading

ORDER - 5

and draw all reasonable inferences in plaintiffs' favor.  *See* *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007).  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.    Facial Challenge**

Plaintiffs' facial challenge fails for the reasons set forth in *Adams*.  As indicated by the Ninth Circuit, to prevail on their facial attack, plaintiffs must show that the "mere enactment" of the MHA ordinance constitutes a taking.  *See* *Adams*, 2025 WL 3081848, at *1 (citing *Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir. 1998), and *Carson Harbor Vill. Ltd. v. City of Carson*, 37 F.3d 468 (9th Cir. 1994)).  In *Adams*, the Ninth Circuit held that the "mere enactment" of the MHA ordinance did not give rise to a taking because the City has "discretion to modify or waive the ordinance's requirements if adherence to the performance or payment options endangers an applicant's constitutional rights."  *Id.*  Indeed, the operative pleading acknowledges that the City has previously granted a waiver, *see* Compl. at ¶ 155 (docket no. 1), which is a fact that, according to the Ninth Circuit, undermines plaintiffs' facial challenge, *see* *Adams*, 2025 WL 3081848, at *1.

Plaintiffs attempt to distance themselves from *Adams* by explaining that they are not asserting "a facial regulatory-takings claim," but rather seek "facial relief" under *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of*

ORDER - 6

*Tigard*, 512 U.S. 374 (1994).  *See* Pls.' Resp. at 24 (docket no. 24).  Plaintiffs fail to explain, however, how *Nollan* and *Dolan* review, in which the Court would examine the particular nexus and proportionality of the MHA payments that plaintiffs made to secure their specific permits, would give rise to the type of "facial relief" that plaintiffs demand, namely, a ruling that the MHA ordinance lacks the requisite nexus and proportionality in all circumstances.  *See Garneau*, 147 F.3d at 809 (summarizing *Nollan* and *Dolan* as establishing a three-part test, which asks (i) whether the land-use exaction at issue would constitute a taking; (ii) whether the exaction passes the "essential nexus" test or, in other words, whether it has a legitimate governmental purpose; and (ii) whether the exaction bears "rough proportionality" to the government's legitimate interests).  *Nollan* and *Dolan* do not announce standards for determining whether a taking has occurred;[3] rather, they address only "how close a fit the exaction (which would otherwise constitute a taking) must have to the harms caused by development" to survive scrutiny under the Fifth and Fourteenth Amendments.  *See id.* at 811.  This inquiry usually involves a case-by-case (as-applied) analysis, which is why it generally cannot be used in connection with facial takings claims or to award, as plaintiffs suggest, "facial relief."  *See Dolan*, 512 U.S. at 391 (explaining that, to demonstrate rough proportionality, "[n]o precise

---

[3] In *Nollan*, the majority observed that "[h]ad California simply required the Nollans to make an easement across their beachfront available to the public on a permanent basis in order to increase public access to the beach, rather than conditioning their permit to rebuild their house on their agreeing to do so, we have no doubt there would have been a taking."  483 U.S. at 831.  In *Dolan*, the majority reasoned that, "had the city simply required petitioner to dedicate a strip of land along Fanno Creek for public use, rather than conditioning the grant of her permit to redevelop her property on such a dedication, a taking would have occurred."  512 U.S. at 384.

ORDER - 7

mathematical calculation is required, but the city must make some sort of *individualized* determination that the required dedication is related both in nature and extent to the impact of the proposed development" (emphasis added)).

Plaintiffs' reliance on two non-binding authorities addressing *Nollan/Dolan* facial challenges is misplaced.  The first decision cited by plaintiffs, *Levin v. City & County of San Francisco*, 71 F. Supp. 3d 1072 (N.D. Cal. 2014), contains reasoning that was later rejected by the Ninth Circuit in *Ballinger v. City of Oakland*, 24 F.4th 1287 (9th Cir. 2022).  Both *Levin* and *Ballinger* involved ordinances that required property owners to pay relocation fees to their tenants upon withdrawing their residences from the rental market.[4]  In *Levin*, the district court reasoned that the *Nollan/Dolan* "doctrine comes into play when the government demands a private payment in exchange for granting a landowner permission to make a different use of her property," and it held that the ordinance at issue failed to meet the "essential nexus" and "rough proportionality" tests. *See* 71 F. Supp. 3d at 1081 & 1084–89.  In contrast, in *Ballinger*, the Ninth Circuit held that the relocation fee was not a taking or an exaction, and it therefore did not trigger the *Nollan/Dolan* requirements.  *See* 24 F.4th at 1297–1300.  The Ninth Circuit reasoned that the relocation fee did not constitute an exaction because it was not charged as a condition

---

[4] *See Levin*, 71 F. Supp. 3d at 1074 ("In July 2014, the City and County of San Francisco enacted an Ordinance that requires property owners wishing to withdraw their rent-controlled property from the rental market to pay a lump sum to displaced tenants."); *see also Ballinger*, 24 F.4th at 1291 ("In January 2018, the City [of Oakland] adopted the Uniform Residential Tenant Relocation Ordinance . . . , which requires landlords re-taking occupancy of their homes upon the expiration of a lease to pay tenants a relocation payment . . . .").

ORDER - 8

of the government granting a benefit, like a permit, license, or registration. _See id._ at 1299–1300 (citing _Cedar Point Nursery v. Hassid_, 594 U.S. 139, 161 (2021)). Rather, the relocation fee requirement was "more properly classified as a wealth-transfer provision" that was consistent with the broad power of the States to regulate the landlord-tenant relationship. _Id._ at 1290–93. In light of _Ballinger_, which is binding precedent, the Court concludes that _Levin_ does not support plaintiffs' ability to pursue a _Nollan/Dolan_ facial challenge to the MHA ordinance.

The second opinion on which plaintiffs rely, _Benedetti v. County of Marin_, 336 Cal. Rptr. 3d 571 (Cal. Ct. App. 2025), _cert. denied_, --- S. Ct. ---, 2026 WL 1855003 (June 29, 2026), also fails to assist plaintiffs in arguing that they present a cognizable _Nollan/Dolan_ facial claim. In _Benedetti_, the challenged ordinance required that, as a condition of a permit to build an additional residential unit, an owner of coastal agricultural land must record, in favor of Marin County, a restrictive covenant in which the owner vowed to actively and directly engage in commercial agriculture or lease the property to a commercial agricultural producer. _Id._ at 575–77. The two brothers who, along with their father's estate, were plaintiffs in _Benedetti_ were full-time plumbers, and they asserted that the ordinance, which they interpreted as "forcing a landowner to engage in a[ particular] occupation in exchange for a development permit," could "never satisfy" the _Nollan/Dolan_ nexus or proportionality requirements "regardless of the specific circumstances of the landowner who applies to build a new agricultural dwelling unit." _Id._ at 577 & 580–81. In concluding that the plaintiffs could proceed with a facial attack, the _Benedetti_ Court noted that the plaintiffs' claims did not require consideration

ORDER - 9

of "whether or how the [restrictive covenant] condition will apply to a particular property or landowner." *Id.* at 581–82. Indeed, the *Benedetti* Court disregarded the plaintiffs' assertions that the size, type, or location of proposed agricultural dwelling units played a role in the *Nollan/Dolan* proportionality analysis because those arguments did not relate to a facial, as opposed to an as-applied, challenge.[5] *Id.* at 585.

In contrast to the plaintiffs in *Benedetti* (as well as in *Levin*), plaintiffs in this matter cannot plausibly claim that the nexus and proportionality calculus would not differ among various types of properties, owners or permit applicants, and/or construction projects. In arguing that, under *Nollan* and *Dolan*, the MHA ordinance must be deemed facially unconstitutional because it cannot be constitutionally applied unless the performance and payment options are waived, plaintiffs fail to plausibly allege that their circumstances are representative of every (or almost every) scenario in which individuals or entities seek or will seek permits to increase the number of units on properties in Seattle. *See Benedetti*, 336 Cal. Rptr. 3d at 578 (describing the standard for a facial

---

[5] The Court notes that, in *Benedetti*, the *Nollan/Dolan* facial claim failed on the merits. The California Court of Appeal concluded that the restrictive covenant condition "easily" met the nexus requirement by (i) "thread[ing] the needle" between "competing concerns" of maintaining the agricultural industry in the coastal zone, preventing residential use values from driving up the costs of agricultural land, and recognizing the integral part in agricultural operations that is played by farmworker housing, and (ii) satisfying those competing concerns "by only allowing development of agricultural dwelling units that will be used to support agricultural use of the property." 336 Cal. Rptr. 3d at 583–84. The restrictive covenant also survived the rough proportionality test; the duration of the required covenant (in perpetuity) was proportionate to its purpose because a covenant of limited duration "would merely slow the transition away from agriculture without actually stopping it," and the scope was proportionate because dwellings of "any size or type that [are] not required and used to support ongoing agriculture begin[ ] to establish a market for residential development and erode the viability of agriculture." *See id.* at 585.

ORDER - 10

attack as requiring the challenger to establish that the enactment either (i) "inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions," or (ii) "conflicts with constitutional principles 'in the generality or great majority of cases'" (quoting *Beach & Bluff Conservancy v. City of Solana Beach*, 239 Cal. Rptr. 3d 86, 101 (Cal. Ct. App. 2018))); *see also* *Levin*, 71 F. Supp. 3d at 1086 (citing non-takings cases as standing for the proposition that, to succeed on a facial claim, a plaintiff must "establish that no set of circumstances exists under which the Act would be valid" (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987), and citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008))).  Plaintiffs' facial attack on the MHA ordinance lacks merit, and the City's motion to dismiss the facial takings claim is GRANTED.[6]

**C.      As-Applied Challenge**

      **1.      Teshome and Volker**

The as-applied claim asserted by plaintiffs Teshome and Volker was premature for the reasons set forth in *Adams*, and it is now moot in light of the re-zoning of, and the inapplicability of the MHA ordinance to, their property.  Like the plaintiff in *Adams*, when Teshome and Volker initiated this lawsuit, they had not sought a waiver of the MHA performance and payment options, and their as-applied challenge is based entirely on speculation that the City would have denied them a waiver.  *See Adams*, 2025 WL

---

[6] In light of this ruling, the Court does not address the City's alternative argument that plaintiffs' facial challenge is time-barred.

ORDER - 11

3081848, at *1 (indicating that the plaintiff's "challenge is based upon a speculative denial of a future waiver application," and that "[a]s-applied claims based on such 'uncertain or contingent future events . . . . are unfit for judicial determination'" (quoting *Koontz Coal. v. City of Seattle*, No. C14-218, 2014 WL 5384434, at *5 (W.D. Wash. Oct. 20, 2014))).  Plaintiffs attempt to distinguish *Adams* on grounds that they, unlike the plaintiff in *Adams*, sought and secured a permit and paid the MHA fee.  *See* Pls.' Resp. at 7 (docket no. 24).  Plaintiffs acknowledge, however, that they could have surrendered their permit, received a refund of the MHA fee, and submitted a new permit application, accompanied with a waiver request, but they chose not to do so.  *See* Compl. at ¶¶ 95–99 (docket no. 1).  Having not provided the City an opportunity to consider and make a final determination concerning whether Teshome's and Volker's circumstances justified a waiver of the MHA fee, plaintiffs cannot establish that their constitutional challenge concerns how the MHA ordinance, including its waiver provision, was applied to Teshome and Volker.  *See* *Pakdel v. City & County of San Francisco*, 594 U.S. 474, 475 (2021) ("a federal court should not consider [a regulatory takings] claim before the government has reached a 'final' decision").

Moreover, as evidenced by subsequent events, the actual legislative culprit in Teshome's and Volker's situation was not the MHA ordinance itself, but rather the land-use code that rendered the Bradner Place South property ineligible for an AADU. The zoning for the property at issue having changed approximately six months after plaintiffs commenced this action, the MHA ordinance no longer imposes a performance or payment option with respect to Teshome's and Volker's project to build a new home

ORDER - 12

with an AADU, which now counts as a single dwelling unit and does not increase the number of units on the Bradner Place South property.  *See* *supra* note 1.  Because the MHA ordinance does not affect Teshome's and Volker's current construction plans, their "as applied" claim is not cognizable.  To the extent the MHA ordinance might impact Teshome's and Volker's future wishes to add more units, either on the same parcel and/or on their other two parcels of land, any related takings claim is, at this point, speculative and not ripe for consideration.  Finally, with respect to any contention that the City owes interest on the MHA fee, which is to be (or perhaps has already been) refunded, such claim would not be actionable under 42 U.S.C. § 1983 as a constitutional tort, but rather must proceed under state law, and the Court would have no subject matter jurisdiction because the parties are not diverse in citizenship.  Thus, any amendment of the complaint with respect to Teshome's and Volker's claims would be futile.  The City's Rule 12(b)(6) motion is GRANTED as to Teshome's and Volker's as-applied challenge to the MHA ordinance, and their as-applied claim is DISMISSED as prematurely asserted and as having been rendered moot by legislative action.

## 2. **Vert and 10.23 Build**

The as-applied claim asserted by plaintiffs Vert and 10.23 Build suffers from the same infirmity as the claims brought in *Adams* and by Teshome and Volker, namely a failure to seek a waiver under SMC 23.58C.035.  In response to the City's related basis for seeking dismissal, plaintiffs contend that, for purposes of raising their *Nollan/Dolan* as-applied challenge, the "finality" requirement is satisfied if no future possibility exists for obtaining a waiver, regardless of whether a waiver might have been possible in the

ORDER - 13

past. *See* Pls.' Resp. at 14 (docket no. 24).  Plaintiffs' reliance on *Pakdel* for this proposition is misplaced.[7]  In *Pakdel*, the Supreme Court explained that, in the context of takings claims brought pursuant to 42 U.S.C. § 1983, "[t]he finality requirement is relatively modest."  594 U.S. at 478.  A plaintiff must show merely that "no question" exists "about how the 'regulations at issue apply to the particular land in question'" or "about the city's position."  *Id.*  To proceed on a regulatory takings claim, a plaintiff must be "actually" injured by the government's action, may not be "prematurely suing over a hypothetical harm," and must prove that the "regulation has gone 'too far.'"  *Id.* at 479.  After the government has "committed to a position," the dispute "is ripe for judicial resolution."  *Id.*

Contrary to plaintiffs' contention, nothing in *Pakdel* excused Vert and 10.23 Build from having to request a waiver of the MHA performance/payment option in advance of commencing litigation to challenge the constitutionality of the MHA ordinance.  Like the plaintiffs in *Pakdel*, Vert and 10.23 Build needed to at least ask for an exemption, even if in an untimely or improper fashion, so as to commit the City to a position.  They failed to

---

[7] The plaintiffs in *Pakdel* had asked the San Francisco Department of Public Works for (i) an exemption to a lifetime lease requirement, which was imposed when, at their request, their multiunit residential building converted to condominiums, or (ii) compensation relating to the required lifetime lease.  *Id.* at 476.  Both requests were denied.  *Id.*  The district court rejected the *Pakdel* plaintiffs' takings claim for lack of ripeness, reasoning that the plaintiffs needed to first seek compensation through the procedures provided by the State of California, *i.e.*, via an inverse condemnation proceeding in state court.  *See id.* at 476–77.  The Ninth Circuit affirmed on an alternate theory that the *Pakdel* plaintiffs did not receive a "truly 'final'" decision because they did not timely seek an exemption "through the prescribed procedures," having waited to request an exemption until months after the conversion was approved and they had committed to the lifetime lease.  *Id.* at 477–78.  The Supreme Court vacated and remanded for further proceedings after clarifying that "nothing more than *de facto* finality is necessary."  *Id.* at 479.

ORDER - 14

do so and therefore have not established the *de facto* finality required to proceed on their as-applied takings claim.  Moreover, although plaintiffs have characterized as "extremely unlikely" Vert's and 10.23 Build's prospects of obtaining an MHA waiver for the four-unit townhouse on Chilberg Avenue Southwest, *see* Pls.' Resp. at 15 (docket no. 24), they have not invoked a "futility exception" to the finality rule or provided any authority supporting the proposition that applying for a waiver under SMC 23.58C.035 may be excused on the basis of futility.[8]  The City's Rule 12(b)(6) motion is GRANTED, and Vert's and 10.23 Build's as-applied challenge to the MHA ordinance is DISMISSED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    The City's motion to dismiss, docket no. 23, is GRANTED as follows: (a) the claim made by all plaintiffs that the MHA ordinance is facially unconstitutional fails to state a claim upon which relief can be granted, and plaintiffs' *Nollan/Dolan* facial claim is DISMISSED with prejudice; (b) plaintiffs Teshome's and Volker's as-applied challenge to the MHA ordinance is DISMISSED as prematurely asserted and as having

---

[8] Indeed, Ninth Circuit jurisprudence suggests otherwise.  As currently framed, the "futility exception" relieves a landowner from "idle or futile" resubmissions of a development plan or additional variance applications after the landowner submits at least one development proposal and one application for a variance, which have been rejected.  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1501 (9th Cir. 1990); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454–55 & n.6 (9th Cir. 1987); *River Landon LLC v. Hinkle*, No 25-cv-4904, 2026 WL 350770, at *6 (N.D. Cal. Feb. 9, 2026); *O'Neil v. Cal. Coastal Comm'n*, No. 19-cv-7749, 2020 WL 2522026, at *5 (C.D. Cal. May 18, 2020).  Thus, even if applicable, the "futility exception" would require an initial attempt to secure a waiver under SMC 23.58C.035.

ORDER - 15

been rendered moot by legislative action; and (c) plaintiffs Vert's and 10.23 Build's as-applied challenge to the MHA ordinance is DISMISSED as unripe; and

(2) The Clerk is directed to enter judgment consistent with this Order, to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 20th day of July, 2026.

Thomas S. Zilly
United States District Judge

ORDER - 16